# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Bosque Power Company, LLC, *et al.*,[1] | ) | Case No. 10-60348 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

### DEBTORS' OBJECTION TO MOTION OF
### FORTUNE ELECTRIC CO., LTD. TO COMPEL ASSUMPTION OR
### REJECTION OF EXECUTORY CONTRACT PURSUANT TO 11 U.S.C. § 365

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") hereby object (the "Objection") to the Motion of Fortune Electric Co., Ltd. to Compel Assumption or Rejection of Executory Contract Pursuant to 11 U.S.C. § 365 [*Docket No. 256*] (the "Fortune Motion"). In support of the Objection, the Debtors, by and through their undersigned counsel, respectfully represent:

### Background

1. On March 24, 2010 (the "Petition Date"), each of the Debtors filed with the Court a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code"), thereby commencing these cases (the "Chapter 11 Cases"). The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases and, as of the date

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: BosPower Development LLC (3544); BosPower Partners LLC (6652); Bosque Power Company, LLC (8361); BosPower Development Blocker I Inc. (1043); BosPower Development Blocker II Inc. (1097); Fulcrum Marketing and Trade LLC (8911).

of the filing of this Objection, no official committees have been appointed or designated. Pursuant to order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes and are being administered jointly.

2. The factual background relating to the Debtors' commencement of these Chapter 11 Cases is set forth in detail in the Declaration of Brian R. McCabe, President of Debtors BosPower Development LLC, BosPower Development Blocker I Inc., BosPower Development Blocker II Inc. and BosPower Partners LLC and an Authorized Representative of Debtors Bosque Power Company, LLC ("BPC") and Fulcrum Marketing and Trade LLC (the "McCabe Declaration"), filed on the Petition Date.

3. Pursuant to Purchase Order No. BPC-04 (with attachments thereto, the "Contract") between Debtor BPC (Buyer) and Fortune Electric Co., Ltd. (Seller) ("Fortune"), Debtor BPC acquired from Fortune, using Lauren Engineers & Constructors, Inc. as agent, a generator step-up transformer (the "Fortune GSU"),[2] manufactured by Fortune and originally designed and specified for Debtor BPC's facility to be used in connection with the addition of the Debtors' "Unit 5" steam turbine to convert two of its gas turbines from single-cycle to combined-cycle operation.

4. Since it was first energized in January 2009, the Fortune GSU experienced excessive noise and vibration emanating from its core, causing concern about the ability to safely operate Unit 5 and the Fortune GSU, and thus to reap the benefits of the over $200 million which the Debtors have spent over the last two years in order to convert their facility to combined-cycle operation. Due to these concerns, the Debtors have repeatedly requested that Fortune honor its

---

[2] A GSU is a critical piece of equipment that modifies the voltage of the electricity produced by a generator turbine in order to provide power to the grid at the correct voltage. Without the appropriate GSU, the power produced by the Debtors' gas-fired and steam turbines cannot be transmitted to the power grid to generate revenue.

2

warranty obligations and repair or replace the Fortune GSU. During the pendency of these Chapter 11 Cases, the Debtors and Fortune have continued to discuss Fortune's obligation to honor its warranty commitments.

5. In the meantime, the Debtors requested authority from this Court to enter into a lease agreement, with an option to purchase on the effective date of a plan of reorganization or the closing date of a sale of all or substantially all of the Debtors' assets to a purchaser, pursuant to which the Debtors could acquire a replacement GSU to replace the Fortune GSU for the Unit 5 combined-cycle steam turbine. On June 7, 2010, this Court approved an Order Pursuant to Sections 105 and 363 of the Bankruptcy Code Authorizing the Debtors to Enter into an Agreement for Lease of Replacement Generator Step-Up Transformer with Option to Purchase [*Docket No. 271*] (the "GSU Order").[3] The Debtors' ability to resolve this outstanding operational issue represents the best opportunity for the Debtors to maximize the value of their estates for the benefit of their creditors.

6. The acquisition of the replacement GSU notwithstanding, the Debtors intend to pursue fully their warranty claims against Fortune.

## **Objection**

7. Fortune's request to compel assumption or rejection of the Contract[4] should be denied because, under the Bankruptcy Code, the Debtors have a breathing spell within which to

---

[3] In accordance with the terms of the GSU Order, the Debtors' equity sponsor committed to fund the costs associated with acquiring, transporting, modifying and installing a suitable replacement GSU and has agreed to lease the replacement GSU to the Debtors, with an option to purchase, pursuant to the terms of a lease agreement approved by this Court in connection with the GSU Order.

[4] The Debtors do not herein concede that the Contract is executory at all. Accordingly, the Debtors reserve all of their rights to dispute the executory or non-executory nature of the Contract and each of the other contracts to which any of the Debtors is a party.

3

decide what to do with their executory contracts and Fortune has shown no compelling reason to limit the Debtors' ability to assume or reject the Contract.

## Argument

8. Fortune's request to compel assumption or rejection of the Contract is inappropriate at this time as a matter of law. Pursuant to Bankruptcy Code section 365(a), a debtor may, at any time during its bankruptcy case, assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). Bankruptcy Code section 365(d)(2) enables a court "on the request of any party to such a contract . . . [to] order [the debtor] to determine within a specified period of time whether to assume or reject such contract or lease." 11 U.S.C. § 362(d)(2). The determination of a "reasonable time" is left to the bankruptcy court's discretion in light of the circumstances of a particular case. *In re G-I Holdings, Inc.*, 308 B.R. 196, 213 (Bankr. D. N.J. 2004) (citing *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2d Cir. 1982)); *see also In re Physician Health Corp.*, 262 B.R. 290, 295 (Bankr. D. Del. 2001) (denying a motion to compel early assumption or rejection, in part, because "[t]he bankruptcy case is only five months old."). Courts have considered a number of factors in determining what constitutes a reasonable time within which a debtor should assume or reject a contract, including "1) the nature of the interests at stake; 2) the balance of the hurt to the litigants; 3) the good to be achieved; 4) the safeguards afforded those litigants; and 5) whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary." *G-I Holdings*, 308 B. R. at 213 (citing *In re Dunes Casino Hotel*, 63 B.R. 939, 949 (D. N.J. 1986)). Fortune fails to, and indeed cannot, demonstrate why, under any of the foregoing factors, it is entitled to the extraordinary relief it seeks.

4

9. "Where a party seeks to compel the Debtors to assume or reject contracts, the burden is on the movant to demonstrate cause." *In re Dana Corp.*, 350 B.R. 144, 147 (Bankr. S.D.N.Y. 2006) (citing *In re Republic Techs. Int'l, LLC*, 267 B.R. 548, 554 (Bankr. S.D. Ohio 2001)). Compelling the Debtors to make an election to assume or reject a contract so early in their Chapter 11 Cases conflicts with the Bankruptcy Code's tenor and structure. *See N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 532 (1984) (referring to the Bankruptcy Code's "overall effort to give the debtor in possession some flexibility and breathing space"); *In re Enron Corp.*, 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002) (stating that it is the "clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until confirmation of a plan, in which to assume or reject an executory contract"); *Dunes Casino Hotel*, 63 B.R. at 949 (referring to the broad purpose of chapter 11 as "to permit [the] successful rehabilitation of debtors"); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1216 (7th Cir. 1984) ("To interpret the Code so as to minimize flexibility and rush the debtor into what may be an improvident decision does not further the purposes of the reorganization provisions."); *In re Mayer Pollock Steel Corp.*, 157 B.R. 952, 965 (Bankr. E.D. Pa. 1993) (holding that a debtor should be given until confirmation of its plan to decide if it is appropriate to assume or reject a contract); *In re St. Mary Hosp.*, 89 B.R. 503, 513 (Bankr. E.D. Pa. 1988) ("[I]n deciding a § 365(d)(2) motion and weighing these considerations, a bankruptcy court is empowered to deny the motion and allow the debtor to wait until the normal deadline of confirmation to assume or reject the contract.").

10. The circumstances in the present case clearly illustrate why debtors generally, and these Debtors specifically, need the breathing room that the Bankruptcy Code affords. Under the protection of chapter 11, the Debtors are working to stabilize their business operations and to

make the Debtors' facility fully functional (delay of which, in large part, has been caused by the faulty Fortune GSU), while at the same time pursuing various strategic alternatives and formulating and developing a confirmable plan of reorganization. In so doing, many of the Debtors primary stakeholders have encouraged the Debtors to refrain from assuming or rejecting contracts at this time[5] and rather to take their time, think long-term and consider the implications of assumption or rejection.

11. With respect to the Contract, Fortune has not met its burden of showing cause for compelling assumption or rejection at this early stage. Fortune argues that it is "currently performing under the contract in good faith and is consequently incurring costs" and that "[f]undamental fairness requires that Fortune Electric's ongoing performance entitles it to have the Debtors' payment default cured." Fortune Motion ¶¶ 29-30. Fortune's "fundamental fairness" argument, which is the only argument Fortune makes in support of its requested relief, is without merit. Pursuant to section 365(d)(3) of the Bankruptcy Code, the Debtors and their counterparties are obligated to continue performing under an executory contract until such contract is assumed or rejected. 11 U.S.C. § 365(d)(3). In accordance with section 365 of the Bankruptcy Code, the Debtors are honoring their undisputed post-petition obligations as they come due and have sufficient cash to do so. Fortune is apparently attempting to use the relief requested in the Fortune Motion to gain leverage in its ongoing negotiations with the Debtors regarding the defective Fortune GSU. Fortune's motive is antithetical to the purpose of allowing

---

[5] On March 24, 2010, the Debtors filed a Motion for Entry of an Order Authorizing the Assumption of Essential Operating Agreements [*Docket No. 8*] (the "Assumption Motion"), to which Credit Suisse AG, Cayman Islands Branch, as administrative and collateral agent to the lenders (the "Lenders") under that certain Credit Agreement dated as of January 16, 2008 (in such capacities, the "Agent"), together with certain Lenders who, in the aggregate, purportedly hold a majority of the debt incurred under such Credit Agreement (collectively, the "Working Group"), filed an objection [*Docket No. 60*] (the "Lenders' Objection"), indicating therein that the requested relief was "premature and not in the best interests of the Debtors' estates at this juncture." Lenders' Objection pp. 1-2. The Court has been continuing a hearing on the Assumption Motion at the request of the Debtors.

the Debtors until plan confirmation to evaluate their contracts (individually and collectively) and make informed decisions about whether to assume or reject each such contract.

12. If the Debtors are compelled to assume or reject the Contract, it is certain that many, if not all, similarly-situated creditors of the Debtors' estates will seek the same relief. The Debtors would thus be forced to choose between assumptions of these various contracts (which would costs their estates perhaps millions of dollars in cure payments), rejections of the contracts (which may leave the Debtors without the services or products provided under the contracts and may severely compromise the Debtors' reorganization efforts) or coming before this Court in every instance (which is costly and time consuming at best). The Debtors should not be forced to make this choice. On this basis alone, the Fortune Motion should be denied.

## Conclusion

13. In sum, there is simply no basis to require the Debtors to make a snap judgment, incur costs and open the floodgates to all manner of similar requests from other counterparties to contracts at this early stage in the Debtors' Chapter 11 Cases. Fortune has presented no evidence of any benefit to the Debtors' estates for immediate assumption or rejection of the Contract. There is no harm to Fortune should the Debtors perform their postpetition obligations (if any) under the Contract throughout the pendency of these Chapter 11 Cases, as they have been performing under all of their prepetition contracts to date.

WHEREFORE, and for the reasons set forth herein, the Debtors respectfully request that the Court enter an order, substantially in the form of the proposed order submitted herewith, denying the Fortune Motion.

Dated: July 15, 2010
Houston, Texas

*/s/ Henry J. Kaim*
**KING & SPALDING LLP**
Henry J. Kaim
State Bar No. 11075400
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone: (713) 751-3200
Facsimile: (713) 751-3290

*Special Finance and Local Counsel for the Debtors and Debtors in Possession*

– and –

**PROSKAUER ROSE LLP**
Jeff J. Marwil (admitted *pro hac vice*)
Peter J. Young (admitted *pro hac vice*)
Grayson T. Walter (admitted *pro hac vice*)
Three First National Plaza
70 West Madison, Suite 3800
Chicago, Illinois 60602-4342
Telephone: (312) 962-3550
Facsimile: (312) 962-3551

*Counsel for the Debtors and Debtors in Possession*

8